UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

ELI CLARK,

                  Defendant.

**DECISION AND ORDER**

Case No. 1:17-cr-0043-LJV-HKS

---

        Last week, I concluded that I lack the authority to detain an individual charged with violating conditions of supervised release. United States v. Wade, 09-cr-260 [216],[1] 2025 WL 786383 (W.D.N.Y. 2025). If ever there were a case that makes me wish that I were wrong, this is it.

## BACKGROUND

        On January 2, 2020, District Judge Lawrence J. Vilardo sentenced defendant Eli Clark to a term of incarceration followed by a term of supervised release, based upon Clark's pleas of guilty to possession with intent to distribute cocaine. [227]. The sentence was confirmed in a Judgment dated January 31, 2020 containing mandatory conditions of supervised release, including the following: "You must not commit another federal, state or local crime". [231] at 3, ¶1.

        In a March 11, 2025 Petition [324], Clark was charged with violating the conditions of his supervised release by committing assault, menacing, harassment and other violations of the New York Penal Law on March 1, 9 and 11, 2025. On Monday of this week,

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

Clark was released from state custody and was brought before me for an initial appearance [325] on the charges in the Petition. I scheduled a conference before Judge Vilardo for further consideration of those charges on March 25, 2025 at 11:30 a.m.. At Clark's request, I also scheduled a preliminary hearing pursuant to Fed. R. Crim. P. ("Rule") 32.1(b)(1)(A).

The preliminary hearing was held before me yesterday. At the hearing, U.S. Probation Special Offender Specialist Daniel T. Trapasso and Village of Kenmore Patrol Officer Mary Brady testified on behalf of the government. The alleged victim of Clark's assault[2] did not appear. Trapasso testified that on March 11, 2025 Clark's alleged victim, with whom he lived, called and told him that she was a victim of domestic violence and that the Kenmore police were at her home. Trapasso sent Probation Officer Erin Kawski to interview her (Kawski did not appear at the hearing).

Officer Brady testified that she and other officers responded to a domestic violence call at the victim's residence that same day. Officer Brady was wearing a bodycam. The bodycam video (government exhibit 5) shows the crying victim telling officers that Clark beat her repeatedly in front of her children, and stating that she was "so scared to even do this right now". Her daughter is also shown on the video, stating that she saw Clark "punching Mommy". Finally, the video clearly shows black and blue marks under the victim's right eye and on her arms and back, which are further depicted in several photos (government exhibit 6).

Officer Brady took a written statement from the victim (government exhibit 8) and prepared a Police Report (government exhibit 7) listing several charges, including Assault - 3rd Degree, in violation of New York Penal Law §120.00-01.[3] Clark was taken into state custody

---

[2] I see no need to disclose her name, although it was disclosed at the hearing.

[3] "A person is guilty of assault in the third degree when . . . With intent to cause physical injury to another person, he causes such injury to such person or to a third person".

when he returned to the residence that day, and was held until March 17, 2025, when he was released following the victim's failure to appear at a felony hearing in Kenmore Village Court. Kenmore Village Justice Katherine J. Bestine issued a Temporary Order of Protection requiring Clark to stay away from the victim and her children (government exhibit 9).

### DISCUSSION

**A. Probable Cause**

Rule 32.1(b)(1)(A) provides that "[i]f a person is in custody for violating a condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred". Rule 32.1(b)(1)(C) states that "[i]f the judge does not find probable cause, the judge must dismiss the proceeding".

Under Rule 32.1(b)(1)(B)(iii), Clark was entitled at the hearing to "an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear". "In making that determination, the court must balance the defendant's interest in confronting the declarant, against the government's reasons for not producing the witness and the reliability of the proffered hearsay." United States v. McCourty, 789 F. Appx. 232, 234 (2d Cir. 2019).

Clark argues that the government has not shown good cause for the victim's failure to testify at the hearing, suggesting that she may not have wanted to perjure herself. That suggestion would have me conclude that she punched herself in the face and back hard enough to leave bruises. That is a leap of faith which I am unwilling to make. "As every schoolchild knows, a picture is worth a thousand words . . . and when there is reliable objective evidence - such as a

video recording - the evidence may speak for itself." Kistner v. City of Buffalo, 2022 WL 22771849, at *9 (W.D.N.Y.), reconsidered in part on other grounds, 2022 WL 22771850 (W.D.N.Y. 2022).

In this case, the bodycam video convinces me "that the interest of justice does not require the witness to appear". See McCourty, 789 F. Appx. at 234 ("[t]he Government had good reasons for relying on [the victim's] out-of-court statements . . . . It was reasonable for the court to conclude that [the victim] refused to testify because she was reasonably in fear of McCourty, given a long history of physical abuse by McCourty against her").

The video also more than convinces me that there is probable cause to support at least a violation of New York Penal Law §120.00-01 and, therefore, probable cause to support a violation of Clark's condition of release that he not commit another state crime. See McCourty, 789 F. Appx. at 234 ("[t]he hearsay evidence was reliable", as it was "corroborated by [the victim's] and her child's statement to the arresting officer that McCourty punched her in the face . . . and by photographs that showed injuries consistent with K.B.'s account of what happened that night").

Having found probable cause, I cannot dismiss this proceeding. In fact, if it were up to me, I would readily conclude not only that there is probable cause to believe that Clark violated his conditions of supervised release, but that he *did* violate those conditions, and I would revoke his release in a heartbeat. However, that is not my decision to make. See Rule 32.1 Advisory Committee Notes (2002 Amendments) ("a district judge must make the revocation decision if the offense of conviction was a felony").

**B. Release Pending Clark's Violation Hearing**

I turn next to the question of Clark's release pending his appearance before Judge Vilardo. "It is often observed that hard cases make bad law . . . . [T]here is some truth to that adage, for the 'hard' cases always tempt judges to exceed the limits of their authority." United Steelworkers of America., AFL-CIO-CLC v. Weber, 443 U.S. 193, 218 (1979) (Burger, C.J., dissenting).

This is such a case. In fact, it is the poster child for why an individual such as Clark should be detained pending a supervised release violation hearing. However, for the reasons discussed in Wade, I find no authority to do so. The government's Memorandum of Law challenging that decision (09-cr-260 [228]) does not squarely address my reasoning in Wade (including footnote 3) as to why 18 U.S.C. §3143(a)(1) does not apply to claimed supervised release violations, and why §3583(e)(3) - which *does* apply - does not provide for pre-hearing detention.

I recognize that my decision in Wade upends years of the accepted practice in this and other courts. However, if my analysis is correct, then that cannot matter. Courts must interpret a statute as written, "even if doing that will reverse the longstanding practice under the statute and the rule . . . . Age is no antidote to clear inconsistency with a statute". Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35, 36 (1998).

**CONCLUSION**

For the reasons discussed herein, although I find probable cause to believe that Clark has violated his conditions of supervised release, I conclude that I lack the authority to

detain him pending his next appearance before Judge Vilardo, and therefore order him released pending that appearance.

However, Judge Vilardo has scheduled oral argument on the government's challenge to my decision in Wade for 11 a.m. this morning, and has stayed my release order in that case until 5 p.m. today. Therefore, I will likewise stay my release order in this case until that same time, so that the government may seek a further stay from Judge Vilardo if he concludes that he has the authority to grant that relief.

**SO ORDERED.**

Dated: March 21, 2025

/s/_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge