UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

     v.

ELI CLARK,

          Defendant.

17-CR-43-LJV-JJM
DECISION & ORDER

_____


      Does this Court have the statutory authority to detain a defendant accused of

violating a condition of supervised release pending a revocation hearing?  Until earlier

this year, the Court would not have hesitated to answer that question in the affirmative.

But several months ago, United States District Judge Stefan R. Underhill broke the mold

and found that "no statute . . . authorizes [a defendant's] detention prior to a

determination of . . . guilt on [a] charged [supervised release] violation."  *United States

v. Mercado*, 2025 WL 297429, at *6 (D. Conn. Jan. 24, 2025).  And last month, United

States Magistrate Judge Jeremiah J. McCarthy agreed, finding that the court did not

have the authority to detain the defendant in this case, Eli Clark.[1]  Docket Item 328.

The government sought this Court's review of Judge McCarthy's decision,[2] Docket Item

329; Clark responded, Docket Item 337; and the government replied, Docket Item 338.[3]

_____

     [1] Judge McCarthy issued similar decisions in two other recent cases.  *See United States v. Taylor*, 2025 WL 914064 (W.D.N.Y. Mar. 26, 2025)*; United States v. Wade*, 2025 WL 786383 (W.D.N.Y. Mar. 12, 2025).

     [2] This Court stayed Judge McCarthy's release order pending its decision on the government's appeal.  *See* Docket Item 335.

     [3] This Court also had the benefit of oral argument in *United States v. Wade*, 09-cr-260.  The Court commends counsel for both sides—the Federal Public Defender's

As Judge McCarthy observed, his and Judge Underhill's decisions "upend[] years of the accepted practice in this and other courts."  *See* Docket Item 328 at 5.[4]  But that is not a reason to disagree with them.  And even though every other court to consider Judge Underhill's decision in *Mercado* thus far has declined to follow it,[5] that does not make this Court's decision a foregone conclusion.  This case concerns perhaps the most fundamental right: to be free from incarceration.  And this Court has an independent obligation to analyze whether some statute authorizes Clark's incarceration even if finding that there is no such authority would "risk[] destabilizing the post-arrest supervision system that has been in effect for decades."  *See United States v. Wade*, 2025 WL 786383, at *4 (W.D.N.Y. Mar. 12, 2025) (citation omitted).

After careful review, however, this Court respectfully disagrees with Judge Underhill and Judge McCarthy and finds that 18 U.S.C. § 3143(a)(1) provides statutory authority for this Court to detain Clark pending his revocation hearing.  Therefore, and for the reasons that follow, this Court revokes Judge McCarthy's release order.

_____

Office and the United States Attorney's Office—for their excellent arguments on this challenging and significant issue.  The defendant in *Wade* subsequently was released on other grounds.  *See* Docket Item 336.

[4] Page numbers in docket citations refer to ECF pagination.

[5] *See United States v. Thompson*, 2025 WL 1114740, at *2-3 (D. Del. Apr. 15, 2025) (Fallon, J.); *United States v. Stubbs*, 2025 WL 1094293, at *3 (W.D.N.Y. Apr. 11, 2025) (Vacca, J.); *United States v. Taylor*, 2025 WL 1076826, at *7 (W.D.N.Y. Apr. 10, 2025) (Arcara, J.); *United States v. DeShaw*, 2025 WL 1024315, at *2 (D. Mont. Apr. 7, 2025) (DeSoto, J.); *United States v. Ceasar*, 2025 WL 974547, at *14 (E.D.N.Y. Apr. 1, 2025) (Matsumoto, J.); *United States v. Richardson*, 2025 WL 998884, at *3 (E.D.N.C. Mar. 11, 2025) (Numbers, J.); *United States v. Malta*, Case No. 6:09-cr-6018, Docket Item 43 (W.D.N.Y. Feb. 18, 2025) (Vacca, J.); *United States v. Phillips*, 2025 WL 484706, at *3 (W.D. Wash. Feb. 13, 2025) (Peterson, J.).

## STATUTORY FRAMEWORK

18 U.S.C. § 3606 covers the "[a]rrest and return of a probationer" or "person on supervised release."  More specifically, section 3606 provides:

> If there is probable cause to believe that [the person] has violated a condition of his probation or release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. . . . The court having supervision of the probationer or releasee, or, if there is no such court, the court last having supervision of the probationer or releasee, may issue a warrant for the arrest of a probationer or releasee for violation of a condition of release, and a probation officer or United States marshal may execute the warrant in the district in which the warrant was issued or in any district in which the probationer or releasee is found.

18 U.S.C. § 3606.

Once the probationer or releasee appears, Federal Rule of Criminal Procedure 32.1 provides that "[t]he magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings."  Fed. R. Crim. P. 32.1(a)(6).  Section 3143(a)(1) in turn provides that

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).

Finally, 18 U.S.C. § 3583 provides authority for a court to revoke a defendant's supervised release following a revocation hearing:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6),  and (a)(7)[,] . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to

3

revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]

18 U.S.C. § 3583(e)(3).

## DISCUSSION

I.    **18 U.S.C. § 3606**

The Court begins with section 3606, which—as noted above—authorizes a court to issue an arrest warrant for someone on supervised release if there is probable cause to believe that the person has violated a condition of release.  The Fourth Circuit has cited section 3606 as authority for "detain[ing a releasee] pending a hearing on [violation] charges."  *United States v. Sadler*, 50 F. App'x 630, 630 (4th Cir. 2002) (per curiam) (citing 18 U.S.C. § 3606); *see also In re Moore*, 2000 WL 274220, at *1 (D.C. Cir. Mar. 8, 2000) ("The district court has authority to detain a defendant pending a revocation hearing if there is probable cause to believe he has violated the terms of supervised release." (citing 18 U.S.C. § 3606 and Fed. R. Crim. P. 32.1)).

But as Clark observes, the court in *Sadler* cited section 3606 in a conclusory fashion and did not analyze the language of the statute.  *See* Docket Item 337 at 7-8.  And on its face, the text of section 3606 does not authorize anything beyond the arrest and detention pending initial appearance of someone who is alleged to have violated a condition of supervised release.  So the authority to detain someone accused of a supervised release violation—if it exists—must come from somewhere else.

## II.    18 U.S.C. § 3143(A)(1)

That somewhere else is section 3143(a)(1), the statute to which Rule 32.1(a)(6) explicitly refers.

As explained above, Rule 32.1—titled "Revoking or Modifying Probation or Supervised Release"—provides that at an initial appearance on a violation of supervised release, "[t]he magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings."  Fed. R. Crim. P. 32.1(a)(6).  But as Judge McCarthy correctly observed, "[p]rocedural rules 'do not provide substantive rights,'" and Rule 32.1 therefore "cannot by itself authorize pre-hearing detention." *Wade*, 2025 WL 786383, at *2 (quoting *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992)); *see* 28 U.S.C. § 2072(b) ("Rules Enabling Act") (providing that procedural "rules shall not abridge, enlarge[,] or modify any substantive right").  "[I]nstead, that authority must be found in the statute to which [the rule] refers, namely 18 U.S.C. § 3143(a)(1)."  *Wade*, 2025 WL 786383, at *2; *see also Mercado*, 2025 WL 297429, at *6 (explaining that Rule 32.1 "cannot amend the cited statute" and "statutory law prohibits procedural rules from providing an independent basis for detention").

So the question is this:  Can the text of 18 U.S.C. § 3143(a)(1)—which gives the court authority to detain "a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence"—be read to authorize detention of someone accused of a violation of supervised release?  That inquiry has two parts:  (1) Has such a person "been found guilty of an offense"?  (2) Is such a person "awaiting imposition or execution of a sentence"?

5

### A.    Rule 32.1 is presumptively valid.

Before diving into the textual analysis of section 3143(a)(1), it is important to note that the Federal Rules of Criminal Procedure have "presumptive validity." *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987).  Under the Rules Enabling Act, the Supreme Court has "the power to prescribe" procedural rules for federal practice. *See* 28 U.S.C. § 2072(a).  The rules are "stud[ied] and approv[ed] . . .  by the Advisory Committee[ and] the Judicial Conference" and then are "reported to Congress for a period of review before taking effect."  *Burlington*, 480 U.S. at 6; *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 552 (1991) (explaining that although the Rules of Federal Procedure "are not enacted by Congress, . . . Congress participates in the rulemaking process" and "the Rules do not go into effect until Congress has had at least seven months to look them over" (citations omitted)).  As a result, an argument that a rule is invalid has—in the words of the Supreme Court—"a large hurdle to get over."  *Bus. Guides*, 498 U.S. at 552 (explaining that challenge to rule "can . . . succeed 'only if the Advisory Committee, th[e Supreme] Court, and Congress erred in their prima facie judgment that the Rule . . . transgresses neither the terms of the [Rules] Enabling Act nor constitutional restrictions'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965))).

What is more—and as the government observes, *see* Docket Item 338 at 3—the statute governing revocation of supervised release explicitly refers to Rule 32.1, further suggesting that Congress gave the rule its stamp of approval.  *See* 18 U.S.C. § 3583(e)(3) (providing that a court may "revoke a term of supervised release . . . if the court, *pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release*, finds by a preponderance of the evidence that the

6

defendant violated a condition of supervised release" (emphasis added)).[6]  In that

context, the Court turns to its analysis of the statutory language.

### B.    Clark has "been found guilty of an offense."

In this Court's view, the answer to the first question is relatively easy:  A person

who is on supervised release necessarily has been found guilty of an offense—the

underlying offense that resulted in the person's being placed on supervised release.

*See Johnson v. United States*, 529 U.S. 694, 701 (2000) (holding that "postrevocation

penalties relate to the original offense").  In fact, the Second Circuit has said just that in

so many words.  *See United States v. Peguero*, 34 F.4th 143, 161 (2d Cir. 2022)

(explaining that "supervised release is imposed as part and parcel of the original

sentence—an inextricable 'part of the penalty for the initial offense'" (quoting *Johnson*,

529 U.S. at 700-01)); *see also United States v. Stubbs*, 2025 WL 1094293, at *3

(W.D.N.Y. Apr. 11, 2025) (Vacca, J.) (finding that "the person alleged to have violated a

condition of his supervised release is 'a person who has been found guilty of an offense'

under 18 U.S.C. § 3143(a)(1)" because "[b]inding Supreme Court and Second Circuit

precedent holds that sanctions for violations of supervised release are attributable to the

defendant's original conviction").

Judge Underhill disagrees.  In *Mercado*, he held that although the defendant

"was certainly found guilty in his underlying federal prosecution[,] . . . he ha[d] already

served the entire term of imprisonment imposed as punishment for that offense."  2025

---

[6] This Court agrees with Judge McCarthy, however, that 18 U.S.C. § 3583(e)(3) does not itself authorize detention prior to a finding that a person has violated a condition of supervised release.  *See Wade*, 2025 WL 786383, at *3.

WL 297429, at *3.  For that reason, Judge Underhill said, "treating [the defendant's] original conviction as justifying further detention . . . would be illogical."  *Id.*  Moreover, according to Judge Underhill, "[e]mploying the original conviction to justify detention, . . . would rely on a theory that [the defendant] could be punished a second time for the same conviction" in violation of the Double Jeopardy Clause of the Fifth Amendment. *Id.*

But "[t]he *Mercado* court's conclusion that 18 U.S.C. § 3143(a)(1) could only authorize a defendant's detention if 'he were found guilty of a *new* offense' is inconsistent with [Second Circuit] precedent."  *See Stubbs*, 2025 WL 1094293, at *3 (quoting *Mercado*, 2025 WL 297429, at *4).  The Second Circuit explicitly has held that "revocation of supervised release is *not a new criminal prosecution*—it is simply an additional sanction authorized by the original sentence based upon the releasee's breach of trust by violating the terms of his conditional release."  *Peguero*, 34 F.4th at 162 (emphasis added).[7]  And that precedent is binding on this Court.

For all those reasons, this Court finds that Clark has "been found guilty of an offense" under section 3143(a)(1).

### C.    Clark is "awaiting . . . execution of [a] sentence."

The more difficult question is the second one:  Is someone who has been accused of violating a condition of supervised release "awaiting imposition or execution of [a] sentence"?

---

[7] It is worth noting that Judge Underhill, who "was sitting by designation on the panel in *Peguero*, . . . was the . . . dissenter in that case," and sua sponte raised the issue of the constitutionality of detention of individuals on supervised release.  *Taylor*, 2025 WL 1076826, at *4; *see Peguero*, 34 F.4th at 165-179 (Underhill, J., dissenting).

When a person is sentenced to probation, the court imposes a sentence of imprisonment but suspends the execution of that sentence unless and until the person violates the conditions set by the court. *See Villiers v. Decker*, 31 F.4th 825, 834 (2d Cir. 2022) (describing a probation as an "act of grace extended to one convicted of a crime through a *suspension of the execution of the sentence imposed* after that conviction" (emphasis added) (quoting *United States v. Markovich*, 348 F.2d 238, 241 (2d Cir. 1965)). That suspension "can be withdrawn in the discretion of the sentencing court when the court is satisfied that the recipient of its grace is unworthy of it." *Id.* (quoting *Markovich*, 348 F.3d at 241).

Along the same lines, the Second Circuit has held that "[a]s a component of the initial sentence, 'supervised release is a form of postconfinement monitoring that permits a defendant a kind of *conditional liberty* by allowing him to serve part of his sentence outside of prison.'" *Peguero*, 34 F.4th at 160 (emphasis added) (alteration omitted) (quoting *Mont v. United States*, 587 U.S. 514, 523 (2019)). Unlike probation, "a supervised release term 'does not replace a portion of the sentence of imprisonment, but rather is an order of supervision *in addition to* any term of imprisonment imposed by the court.'" *Id.* (quoting U.S. Sent'g Guidelines Manual, Ch. 7, pt. A, intro. (2)(b) (U.S. Sent'g Comm'n 2021)). "Therefore, at the time of the sentencing on the underlying criminal offense, the maximum term of imprisonment that the defendant can face for that conviction is the maximum term of imprisonment for the underlying crime *plus* the maximum term of his supervised release authorized by statute for the underlying offense, if he violates any conditions of release." *Id.* And as a result, "like a revocation

9

of probation or parole, [reimprisonment on a violation of supervised release] merely completes the original sentence imposed." *Id.* at 161.

In other words, a defendant sentenced to a term of imprisonment followed by a term of supervised release has a two-part prison sentence: (1) the initial term of imprisonment and (2) the potential additional term of imprisonment that can be imposed for violating a condition of supervised release. Both of those prison terms are "imposed" at the time of sentencing. *See Peguero*, 34 F.4th at 160-61 (rejecting argument "that because a term of supervised release is distinct from the original *term of incarceration*, it must also be distinct from the original *sentence*" and explaining that instead, "like a revocation of probation or parole, [a revocation of supervised release] merely completes the original sentence imposed").

But a question remains: When is the sentence "executed"?

There is no dispute that the first part of a sentence that includes both incarceration and supervised release—the initial term of imprisonment—is executed when a defendant goes into custody following the imposition of sentence. *See United States v. Nkanga*, 450 F. Supp. 3d 491, 495-96 (S.D.N.Y. 2020) (holding that defendant's "sentence [was] 'executed' when the Court remanded him to the [Bureau of Prisons]'s custody after sentencing" and that "the Court [therefore] lost its authority to grant bail under [s]ection 3143(a)" while he was in custody). It follows, then, that any additional term of imprisonment for violating a condition of supervised release likewise is executed if and when the person goes back into custody for that violation. Unless and until that occurs, the execution of that additional term—much like a prison term for a probationer—is suspended. *See Peguero*, 34 F.4th at 157 (rejecting "the dissent's

contention that there are distinctive characteristics of a supervised release revocation proceeding, as compared to parole and probation"); *Villiers*, 31 F.4th at 834 ("A defendant's 'acceptance of probation when execution of sentence has been suspended constitutes an acceptance of the probation conditions,' one of those conditions being 'that the probationer shall not violate any [s]tate or [f]ederal [p]enal [l]aw[.]'" (alterations and some internal quotation marks omitted) (quoting *Markovich*, 348 F.2d at 239)); *see also Stubbs*, 2025 WL 1094293, at *4 (explaining that "courts equate the time a defendant is on supervised release to a suspension of the execution of the original sentence insofar as he is released on certain conditions which, if violated, could result in reimprisonment attributable to his original conviction").[8]  As a result, a person on supervised release who has been accused of a violation is "awaiting . . . execution of [a] sentence" in that such a person is "awaiting" the potential "execution of" the additional term of imprisonment authorized under the original "sentence."  *See* 18 U.S.C. § 3143(a)(1).

Clark argues that he is not "awaiting . . . execution of [a] sentence" because as of yet, "[n]o penalties have flowed from the original sentence, and we do not know if they will.  Rather, [he] is being held in jail before a revocation that may or may not occur."

---

[8] Additionally, in *United States v. Grady*, 818 F. App'x 86 (2d Cir. 2020) (summary order), a panel of the Second Circuit rejected the defendant's argument "that the district court violated due process by forcing him to choose between proceeding with a revocation proceeding or being remanded into custody while defense counsel marshalled mitigating evidence to rebut the allegations."  *Id.* at 87-88.  In reaching its conclusion, the panel explained that "[r]evocation of supervised release proceedings are governed by Rule 32.1" and that "pending further proceedings, the judge may release or detain the person under 18 U.S.C. § 3143(a)(1)."  *Grady*, 818 F. App'x at 87-88 (internal quotation marks omitted).  The panel did not, however, address the arguments raised here.

Docket Item 337 at 5 (emphasis omitted); *see also Mercado*, 2025 WL 297429, at \*4 ("Only after a criminal defendant has been convicted or has pled guilty does the defendant *await* the imposition of their potential sentence; only after imposition of sentence can the defendant *await* the execution of the sentence."). But that takes too narrow a view of the word "await."

"Awaiting" can mean being in a state of limbo rather than waiting on a certain result. *See* "await," *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/await (last visited April 17, 2025) (defining "await" as "to wait for" or "to remain in abeyance until"). Put another way, a person on supervised release who is unsure whether further imprisonment will be imposed is "awaiting" that potential outcome until the person completes the term of supervised release. *See United States v. Malta*, Case No. 6:09-cr-6018, Docket Item 43 at 9 (W.D.N.Y. Feb. 18, 2025) (Vacca, J.) (explaining that because defendant "now stands accused of violating the conditions of his release, [he] awaits the Court's decision as to whether and to what extent he breached the trust involved in a term of supervised release").

At a minimum, the statutory language is ambiguous. *Cf. Scott v. Vargo*, 2014 WL 11514067, at \*4-5 (E.D. Va. Sept. 5, 2014) (rejecting argument that phrase "awaiting trial" was unambiguous because "[t]he dictionary definition of 'await' includes: 'to remain in abeyance until'" (citation omitted)). Ambiguity in statutory language prompts the Court to turn "to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (internal citation omitted). And as explained above, *see supra* Section II.A, Congress had the opportunity to review Rule 32.1, which is presumptively

valid, and explicitly referenced it in 18 U.S.C. § 3583(e)(3).  That strongly suggests that Congress intended section 3143(a)(1) to cover an individual on supervised release with a pending violation petition.  Moreover, as this Court observed at oral argument in *Wade*, section 3606—authorizing the arrest of someone accused of a supervised release violation—would make little sense if the Court had no authority to detain someone following the initial appearance.

For all those reasons, Clark is "awaiting . . . execution of [a] sentence" under section 3143(a)(1), and this Court therefore has the statutory authority to detain him.[9]

## CONCLUSION

For the reasons explained above, this Court finds that it has the statutory authority to detain Clark and therefore revokes Judge McCarthy's release order.

SO ORDERED.

Dated:   April 17, 2025
         Buffalo, New York


                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE

---

[9] Because this Court finds that it has statutory authority to detain Clark, it need not and does not reach whether it also would have authority under its inherent judicial powers.  *See Phillips*, 2025 WL 484706, at *3 (declining to follow *Mercado* "because, even absent the authority granted by [section] 3143(a) and Rule 32.1(a), the Court has the inherent power to detain individuals").